# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES MORROW, on behalf of himself and all others similarly situated, | Civil Case Number: |
| Plaintiff(s), | |
| -against- | **CIVIL ACTION** |
| ROBERTSON, ANSCHUTZ, SCHNEID, CRANE & PARTNERS, PLLC; and JOHN DOES 1-25, | **CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |
| Defendant(s). | |

## LOCAL CIVIL RULE 10.1 STATEMENT

The mailing addresses of the parties to this action are:

JAMES MORROW
5101 Marshall Road
Farmingdale, New Jersey 07727

ROBERTSON, ANSCHUTZ, SCHNEID, CRANE & PARTNERS, PLLC
130 Clinton Road, Suite 202
Fairfield, New Jersey 07004

## PRELIMINARY STATEMENT

1.     Plaintiff on behalf of himself and all others similarly situated ("Plaintiff"), by and through his attorneys, alleges that Defendants, ROBERTSON, ANSCHUTZ, SCHNEID, CRANE & PARTNERS, PLLC ("RAS LAW") and JOHN DOES 1-25 their employees, agents and successors (collectively "Defendants") violated 15 U.S.C. § 1692 *et seq*., the Fair Debt Collection Practices Act (hereinafter "FDCPA"), which prohibits debt collectors from engaging in abusive, deceptive and unfair practices.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this action pursuant to 15 U.S.C. § 1692k(d). This is an action for violations of 15 U.S.C. § 1692 *et seq.*

3.      Venue is proper in this district because the acts of the Defendant that give rise to this action occurred in substantial part there.

## DEFINITIONS

4.      As used in reference to the FDCPA, the terms "creditor," "consumer," "debt," and "debt collector" are defined in § 803 of the FDCPA and 15 U.S.C. § 1692a.

## PARTIES

5.      The FDCPA, 15 U.S.C. § 1692 *et seq.*, which prohibits certain debt collection practices provides for the initiation of court proceedings to enjoin violations of the FDCPA and to secure such equitable relief as may be appropriate in each case.

6.      Plaintiff is a natural person, a resident of Monmouth County, New Jersey and is a "Consumer" as defined by 15 U.S.C. § 1692a(3).

7.      RAS LAW maintains a location at maintains a location at 130 Clinton Road, Suite 202, Fairfield, New Jersey 07004.

8.      RAS LAW uses the instrumentalities of interstate commerce or the mails to engage in the principal business of collecting debt and/or to regularly engage in the collection or attempt to collect debt asserted to be due or owed to another.

9.      RAS LAW is a "Debt Collector" as that term is defined by 15 U.S.C. § 1692(a)(6).

10.     John Does 1-25, are currently unknown Defendants whose identities will be obtained in discovery and at that time will be made parties to this action. Plaintiff's claims

against the currently unknown Defendants arise out of the same transaction, occurrence or series of transactions arising from known Defendant's actions and are due to common questions of law and fact whose joinder will promote litigation and judicial efficiency.

## **CLASS ACTION ALLEGATIONS**

11.    Plaintiff brings this action as a class action, pursuant to Rule 23 of the FRCP, on behalf of himself and all New Jersey consumers and their successors in interest (the "Class"), who RAS LAW collected or attempted to collect a debt from, in violation of the FDCPA, as described in this Complaint.

12.    This Action is properly maintained as a class action. The Classes are initially defined as:

CLASS A – FDCPA

- All New Jersey consumers who were sent letters and/or notices from RAS LAW attempting to collect a debt on behalf of DYCK-O'NEAL, INC. (See Exhibit A), which included the alleged conduct and practices described herein.

  The Class period begins one year to the filing of this Action.

CLASS B - Truth-in-Consumer Contract, Warranty and Notice Act

- All New Jersey consumers who were sent letters and/or notices from RAS LAW attempting to collect a debt on behalf of DYCK-O'NEAL, INC. (See Exhibit A), which included any provision that violated any clearly established legal right of those consumers or the responsibility of a creditor as established by State or Federal law at the time the letters and/or notices were given to those consumers.

  The Class period begins six years to the filing of this Action.

  The class definitions may be subsequently modified or refined.

13.    The Class satisfies all the requirements of Rule 23 of the FRCP for maintaining a class action:

- Upon information and belief, the Class is so numerous that joinder of all members is impracticable because there may be hundreds and/or thousands of persons who were sent debt collection letters and/or notices from the Defendants that violate specific provisions of the FDCPA. Plaintiff is complaining of a standard form letter and/or notice.  (*See* **Exhibit A**, except that the undersigned attorney has redacted the financial account numbers and/or personal identifiers in an effort to protect Plaintiff's privacy);

- There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member.  These common questions of law and fact include, without limitation:

  a.    Whether the Defendants violated various provisions of the FDCPA;

  b.    Whether Plaintiff and the Class have been injured by the Defendants' conduct;

  c.    Whether Plaintiff and the Class have sustained damages and are entitled to restitution as a result of Defendants' wrongdoing and if so, what is the proper measure and appropriate statutory formula to be applied in determining such damages and restitution; and

  d.    Whether Plaintiff and the Class are entitled to declaratory and/or injunctive relief.

- Plaintiff's claims are typical of the Class, which all arise from the same operative facts and are based on the same legal theories.

- Plaintiff has no interest adverse or antagonistic to the interest of the other members of the Class.

- Plaintiff will fairly and adequately protect the interest of the Class and has retained experienced and competent attorneys to represent the Class.

- A Class Action is superior to other methods for the fair and efficient adjudication of the claims herein asserted. Plaintiff anticipates that no unusual difficulties are likely to be encountered in the management of this class action.

- A Class Action will permit large numbers of similarly situated persons to prosecute their common claims in a single forum simultaneously and without the duplication of effort and expense that numerous individual actions would engender.  Class treatment will also permit the adjudication of relatively small claims by many Class members who could not otherwise afford to seek legal redress for the wrongs complained of herein.  Absent a Class Action, class members will continue to suffer losses of statutory protected rights as well as monetary damages.

- Defendants have acted on grounds generally applicable to the entire Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

## <u>STATEMENT OF FACTS</u>

14.    Plaintiff is at all times to this lawsuit, a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

15.    Sometime prior to March 10, 2023, Plaintiff allegedly incurred a financial obligation to DYCK-O'NEAL, INC. or a predecessor creditor ("MORTGAGE COMPANY").

16.     The obligation arose out of a transaction, in which money, property, insurance or services, which are the subject of the transactions, was primarily for personal, family or household purposes.

17.     Plaintiff did not incur the MORTGAGE COMPANY obligation for business purposes.

18.     Plaintiff incurred the MORTGAGE COMPANY obligation in connection with a residential mortgage.

19.     The MORTGAGE COMPANY obligation is a "debt" as defined by 15 U.S.C. § 1692a(5).

20.     MORTGAGE COMPANY is a "creditor" as defined by 15 U.S.C. § 1692a(4).

21.     On or before March 10, 2023, the MORTGAGE COMPANY obligation was assigned, directly or through an agent, to RAS LAW for the purpose of collections.

22.     At the time the MORTGAGE COMPANY obligation was assigned to RAS LAW, the MORTGAGE COMPANY obligation was in default.

23.     RAS LAW caused to be delivered to Plaintiff, a letter dated March 10, 2023, regarding the MORTGAGE COMPANY obligation.  See **Exhibit A,** which is fully incorporated herein by reference.

24.     The March 10, 2023 letter is a "communication" as defined by 15 U.S.C. § 1692a(2).

25.     Upon receipt, Plaintiff read and relied on the notices, statements and representations in the March 10, 2023 letter.

26.     RAS LAW admitted that it was a debt collector in its March 10, 2023 letter:

**THIS FIRM IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

27.     The March 10, 2023 letter stated, in part, the following:

> If this is the first notice that you have received from this office be advised that: You may dispute the validity of the debt or any portion thereof.  If you do so in writing within thirty (30) days from receipt of this letter, this firm will obtain and provide you with written verification thereof; otherwise, the debt will be assumed to be valid. Likewise, if you requested within thirty (30) days from receipt of this letter, the firm will send you the name and address of the original creditor if different from above.

28.     The March 10, 2023 letter also stated the following:

> Your mortgage is in serious default because you have not made the required payments. The total amount now required to cure this default, in other words, the amount required to bring your mortgage current to March 10, 2023 is as follows:
> <u>**Monthly Payments missed:**</u>
> Payments from 12/01/2021 to 03/01/2023   $142, 117.58
>
> <u>**TOTAL YOU MUST PAY TO CURE DEFAULT:**</u>   $142, 117.58
>
> You have the right to cure the default within THIRTY (30) days of the date of this letter, in other words, the amount to bring your mortgage current must be satisfied by April 09, 2023.

29.     The March 10, 2023 letter further advised Plaintiff that:

> If you do not cure the default within thirty (30) days of the date of this letter, Dyck-O'Neal, Inc. intends to exercise its right to accelerate the mortgage payments, and initiate foreclosure proceedings on your property.

30.     The March 10, 2023 letter advised Plaintiff that DYCK-O' NEAL, INC. held the Mortgage for $74,000.00 and that the present principal balance of the mortgage was $73,603.67.

31.     Defendant's March 10, 2023 letter caused Plaintiff confusion and frustrated his ability to intelligently choose a response to the letter.

32.     Plaintiff didn't know which of the balances provided by the Defendant was the amount of the debt: $74,000.00; $73,603.67 or $142,117.58, required to be disclosed by the Fair Debt Collection Practices Act (and required to be disclosed pursuant to Regulation F discussed below).

33.     If the March 10, 2023 letter was the first communication with Plaintiff, then, as described herein, the letter failed to comply with the FDCPA and Regulation F (discussed below).

34.     If the March 10, 2023 letter was not the first letter to Plaintiff, then the letter implies that Plaintiff had lost the ability to dispute the MORTGAGE COMPANY obligation.

35.     However, Plaintiff can dispute the MORTGAGE COMPANY obligation with Defendant at any time it is still attempting to collect the debt. While it may not trigger a right to obtain verification, it does trigger an obligation that Defendant report that dispute to any credit reporting bureau it is reporting the MORTGAGE COMPANY obligation to.

36.     The March 10, 2023 letter demanded that payment of the MORTGAGE COMPANY obligation be made **within** 30 days of the letter.

37.     The March 10, 2023 letter advised Plaintiff that Defendant would assume the debt was valid unless Plaintiff sent a written dispute.

38.     Pursuant to 15 U.S.C. § 1692l(d) of the FDCPA, "Except as provided in section 1029(a) of the Consumer Financial Protection Act of 2010 (12 U.S.C. 5519(a)), the Bureau may prescribe rules with respect to the collection of debts by debt collectors, as defined in this subchapter."

39.     Accordingly, the CFPB prepared and issued rules prescribed under 12 CFR § 1006 et seq., commonly referred to as Regulation F.

40.     Regulation F established a Model Form initial collection letter which if used properly by a debt collector would satisfy regulatory compliance with 12 CFR § 1006.34(d)(2)(i).

41.     While use of the Model Form initial collection letter might be sufficient to provide the information required by 12 CFR § 1006.34, it does not guarantee compliance with the requirements of 15 U.S.C. § 1692g or any other section of the FDCPA.

42.     As a result, just because a debt collector uses the Model Form initial collection letter that purports to comply with 12 CFR § 1006.34, it does not mean that a debt collector has complied with provisions of the FDCPA.

43.     Moreover, even if use of the Model Form initial collection letter might provide a safe harbor for some of section 1692g's statutory requirements, a safe harbor for the form of provided information is different from a safe harbor for the substance of that information.

44.     Thus, use of the Model Form initial collection letter only provides coverage for regulatory compliance (with the CFPB) and not statutory compliance.  See 12 CFR § 1006.34(d)(2)(i).

45.     **While a debt collector does not have to use the Model Form initial collection letter, it still is required to provide the consumer with all of the information now required by Regulation F**.

46.     Pursuant to Regulation F, a debt collector must disclose an itemization of the current amount of the debt reflecting any interest, fees, payments and credits occurring after the itemization date. See 12 CFR § 1006.34(c)(2)(vii).

47.     That itemization **_must_** reflect the amount of the debt since the itemization date that is attributable to 1) interest charged, 2) fees incurred, 3) payments made, and 4) credits.

48.     A debt collector **<u>must</u>** include fields in the notice for all four of these items when providing the validation information, even if no additional amounts have accrued since the itemization date.

49.     For each of the four items, a debt collector **<u>must</u>** not leave the amount disclosure blank, but instead, **<u>must</u>** indicate that no amounts have been incurred since the itemization date. For example, if a consumer has not made any payments since the itemization date, a debt collector providing that consumer a written notice must still include a field for payments made in the itemization but may indicate that the value of payments made since the itemization date is "0" or "none," or may state that no payments have been assessed or applied to the debt.

50.     Defendant's March 10, 2023 letter fails to include the itemization disclosures as required by 12 CFR § 1006.34(c)(2)(vi), (vii) and (viii).

51.     Pursuant to Regulation F, Defendant was required to provide Plaintiff with the specific date that the debt collector will consider the end date of the validation period during which a consumer may dispute the debt or request the name and address of the original creditor. See 12 CFR § 1006.34(c)(3)(i), (ii) and (iii).

52.     Defendant's March 10, 2023 letter failed to advise Plaintiff of the specific date that the validation period would end on as required under 12 CFR § 1006.34(c)(3)(i), (ii) and (iii).

53.     Defendant's March 10, 2023 letter fails to include any of the additional information required by Regulation F, including but not limited to: 12 CFR § 1006.34(c)(3)(iv); 12 CFR § 1006.34(c)(4)(i); and 12 CFR § 1006.34(c)(4)(ii).

54.     As described herein, Defendant's March 10, 2023 letter fails to include all of the notices, information, disclosures, and statements required by Regulation F.

55.    Defendant's March 10, 2023 letter fails to contain the statement required under 12 CFR § 1006.34(c)(3)(iv).

56.    Defendant's March 10, 2023 letter failed to provide the necessary consumer-response information required by 12 CFR § 1006.34(c)(4).

57.    Defendant has never sent any written communication to Plaintiff which includes any of the notices and information now required to be given to Plaintiff pursuant to Regulation F.

58.    The stated purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

59.    As described herein, Defendant engaged in abusive debt collection practices against the Plaintiff which deprived Plaintiff of the right to enjoy the benefits provided by the FDCPA.

60.    RAS LAW knew or should have known that its actions violated the FDCPA.

61.    Defendants could have taken the steps necessary to bring their actions within compliance with the law but neglected to do so and failed to adequately review its actions to ensure compliance with the law.

## POLICIES AND PRACTICES COMPLAINED OF

62.    It is RAS LAW's policy and practice to send written collection communications, in the form annexed hereto as **Exhibit A**, which violate the law, by *inter alia*:

    (a)    Using false, deceptive or misleading representations or means in connection with the collection of a debt;

    (b)    Using unfair or unconscionable means to collect or attempt to collect any debt;

    (c)    Making a false representation of the amount of the debt;

    (d)    Failing to effectively convey the amount of the debt;

    (e)    Overshadowing and/or contradicting Plaintiff's rights under the FDCPA;

    (f)    Failing to provide Plaintiff with notices and/or disclosures which are required by the FDCPA and/or Regulation F; and

    (g)    Distributing a written notice which included a provision that violated any clearly established legal right of a consumer or the responsibility of a creditor as established by State or Federal law at the time that the notice was given.

63.    On information and belief, Defendants sent written communications in the form annexed hereto as **<u>Exhibit A</u>** to at least 50 natural persons New Jersey within one year of this Complaint.

## <u>COUNT I</u>

### **NEW JERSEY DECLARATORY JUDGMENT ACT**

64.    Plaintiff, on behalf of himself and others similarly situated, repeats and realleges all prior allegations as if set forth at length herein.

65.    As discussed herein, the Court has jurisdiction to declare the rights of Plaintiff and others similarly situated relative to the Defendant.

66.    Plaintiff is a person interested under a written contract or other writing constituting a contract or whose rights, status or other legal relations are affected by a statute, contract, who may have determined any question of construction or validity arising under the instrument, statute, contract and obtain a declaration of rights, status or other legal relations thereunder.

67.    Plaintiff and others similarly situated are entitled to Declaratory Judgment that Defendant violated the Plaintiff's rights and the FDCPA as alleged herein.

## COUNT II

**FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. §**
**1692 *et seq*.  VIOLATIONS**

68.    Plaintiff, on behalf of himself and others similarly situated, repeats and realleges all prior allegations as if set forth at length herein.

69.    Collection letters and/or notices, such as those sent by Defendants, are to be evaluated by the objective standard of the hypothetical "least sophisticated consumer."

70.    Defendant's letter would cause the least sophisticated consumer to be confused about his or her rights.

71.    Defendant violated various provisions of the FDCPA including but not limited to: 15 U.S.C. § 1692e; §1692e(2)(A); § 1692e(10); §1692g et seq.; §1692g(a)(1); §1692g(a)(3) and §1692g(b).

72.    Defendants violated 15 U.S.C. § 1692e of the FDCPA by using any false, deceptive or misleading representation or means in connection with their attempts to collect debts from Plaintiffs and others similarly situated.

73.    Defendants violated 15 U.S.C. § 1692e of the FDCPA in connection with their communications to Plaintiffs and others similarly situated.

74.    As described herein, Defendants violated 15 U.S.C. § 1692e of the FDCPA.

75.    Defendant falsely represented the amount of the debt.

76.    Defendant falsely represented that Plaintiff could only dispute the debt in writing.

77.    By failing to comply with Regulation F as described herein, Defendants violated 15 U.S.C. § 1692e of the FDCPA.

78.    Defendant's false, misleading and deceptive statement(s) is material to the least sophisticated consumer.

79.    As described herein, Defendants violated 15 U.S.C. § 1692e(2)(A).

80.    As described herein, Defendants violated 15 U.S.C. § 1692e(10).

81.    As described herein, Defendants violated 15 U.S.C. § 1692f.

82.    As described herein, Defendants violated 15 U.S.C. § 1692g(a) et seq.

83.    Defendant violated 15 U.S.C. § 1692g(a) et seq. by failing to effectively convey the information required by same.

84.    Defendant violated the FDCPA by overshadowing and/or contradicting the notices and information mandated by 15 U.S.C. § 1692g(a) et seq.

85.    Defendant violated 15 U.S.C. § 1692g(a)(1) by providing contradictory amounts of the debt.

86.    Defendant violated 15 U.S.C. § 1692g(a)(1) by failing to effectively convey the amount of the debt.

87.    Defendant violated 15 U.S.C. § 1692g(a)(3) by imposing a requirement that disputes must be in writing.

88.    As described herein, Defendants violated 15 U.S.C. § 1692g(b).

89.    As described herein, Defendant violated provisions of Regulation F.

90.    Congress enacted the FDCPA in part to eliminate abusive debt collection practices by debt collectors.

91.    Plaintiff and others similarly situated have a right to free from abusive debt collection practices by debt collectors.

92.     Plaintiff and others similarly situated have a right to receive proper notices mandated by the FDCPA.

## COUNT III

### TRUTH-IN-CONSUMER CONTRACT, WARRANTY AND March 10, 2023 letter ACT, N.J.S.A. § 56:12-14 *et seq.* VIOLATIONS

93.     Plaintiff, on behalf of himself and others similarly situated, repeats and realleges all prior allegations as if set forth at length herein.

94.     Plaintiff and others similarly situated are consumers.

95.     MORTGAGE COMPANY is a creditor for purposes of N.J.S.A. § 56:12-14 et seq.

96.     At all times relevant to this matter, Defendant was acting on behalf of MORTGAGE COMPANY

97.     Upon information and belief, MORTGAGE COMPANY was aware that Defendant was using the March 10, 2023 form of collection letter sent to Plaintiff at all times relevant to this matter and approved of its use.

98.     The FDCPA establishes clear rights for the Plaintiff and others similarly situated.

99.     The FDCPA establishes clear responsibilities for the Defendants when attempting to collect a debt.

100.    The March 10, 2023 letter is a notice and/or contains notices required by the FDCPA and/or Regulation F.

101.    As described herein, Defendants gave Plaintiff written notices which included a provision(s) that violated a clearly established right of the Plaintiff and others similarly situated as established by State or Federal law at the time that the notice was given.

102.    As described herein, Defendants gave Plaintiff written notices which included a provision(s) that violated a clearly established responsibility of the creditor as established by State or Federal law at the time that the notice was given.

103.    As described herein, Defendants violated clearly established rights of the Plaintiff under the FDCPA and/or under Regulation F.

104.    As described herein, Defendants violated clearly established responsibilities of the creditor under the FDCPA.

105.    As described herein, Defendants violated the Truth-in-Consumer Contract, Warranty and Notice Act, N.J.S.A. § 56:12-14 et seq.

106.    Plaintiff is an aggrieved consumer for purposes of N.J.S.A. § 56:12-17.

**WHEREFORE,** Plaintiff demands judgment against Defendants as follows:

(a)    Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class representative and his attorneys as Class Counsel;

(b)    Awarding Plaintiff and the Class statutory damages;

(c)    Awarding attorneys' fees and costs;

(d)    Awarding post-judgment interest.

(e)    Awarding Plaintiff and the Class such other and further relief as the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby requests a trial by jury on all issues so triable.

## <u>CERTIFICATION  PURSUANT TO LOCAL RULE 11.2</u>

I, hereby certify that the matter in controversy is not the subject matter of any other court,

arbitration or administrative proceeding.

Dated: August 11, 2023

<u>*s/ Joseph K. Jones*            </u>
Joseph K. Jones, Esq. (002182006)
JONES, WOLF & KAPASI, LLC
375 Passaic Avenue, Suite 100
Fairfield, New Jersey 07004
(973) 227-5900 telephone
(973) 244-0019 facsimile
jkj@legaljones.com
*Attorneys for Plaintiff*

# EXHIBIT

# A



**ROBERTSON, ANSCHUTZ, SCHNEID, CRANE & PARTNERS, PLLC**
L A W   O F F I C E S
*A professional limited liability company organized in the State of Florida*
130 Clinton Road, Suite 202
Fairfield, NJ 07004
Phone: 973-575-0707
Fax: 973-404-8886
www.raslegalgroup.com

Richard Citron, Esq.
Managing Partner, NJ and PA Offices
Admitted in PA, NJ and NY

James Robertson, Esq. deceased
Everett Anschutz, Esq. TX Bar
David J. Schneid, Esq. FL Bar
John T. Crane, Esq. GA, and TX Bar

File Number: ████████

March 10, 2023

JAMES MORROW
5101 MARSHALL RD
FARMINGDALE, NJ 07727

**SENT VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED AND REGULAR MAIL**
Re:    Property Address: 5101 MARSHALL RD, FARMINGDALE, NJ 07727
Loan No.: ██████

## NOTICE OF INTENTION TO FORECLOSE

Your lender, DYCK-O'NEAL, INC located at 3100 Monticello Avenue, Suite 650, Dallas, TX 75205 holds the Mortgage, dated November 21, 2006, for $74,000.00, on your property located at 5101 MARSHALL RD, FARMINGDALE, NJ 07727. The servicer is Dyck-O'Neal, Inc. located at 3100 Monticello Avenue, Suite 650, Dallas, TX 75205. The present principal balance of the mortgage is $73,603.67.

**THIS FIRM IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. HOWEVER, IF YOU ARE IN BANKRUPTCY OR IF YOU HAVE PREVIOUSLY RECEIVED A DISCHARGE OF THIS DEBT IN BANKRUPTCY, THIS CORRESPONDENCE IS NOT, AND SHOULD NOT, BE CONSTRUED AS AN ATTEMPT TO COLLECT A DEBT, BUT NOTICE OF POSSIBLE ENFORECEMENT OF A LIEN AGAINST THE COLLATERAL PROPERTY.**

If this is the first notice that you have received from this office be advised that: You may dispute the validity of the debt or any portion thereof. If you do so in writing within thirty (30) days from receipt of this letter, this firm will obtain and provide you with written verification



THIS IS AN ATTEMPT TO COLLECT A DEBT.
ANY INFORMATION OBTAINED **WILL BE USED FOR THAT PURPOSE.**
23-093048 - NaS

thereof; otherwise, the debt will be assumed to be valid. Likewise, if you requested within thirty (30) days from receipt of this letter, the firm will send you the name and address of the original creditor if different from above.

**Please be advised of the following:**

1.  This letter concerns the mortgage described above.

2.  Your mortgage is in serious default because you have not made the required payments. The total amount now required to cure this default, in other words, the amount required to bring your mortgage current to March 10, 2023 is as follows:

<u>**Monthly Payments missed:**</u>
Payments from 12/01/2021 to 03/01/2023    $142,117.58

**TOTAL YOU MUST PAY TO CURE DEFAULT:**    $142,117.58

3.  You have the right to cure the default within THIRTY (30) days of the date of this letter, in other words, the amount to bring your mortgage current must be satisfied by April 09, 2023.

4.  To cure this default you must pay the amount of $142,117.58 plus any additional monthly payments and late charges which may fall due during the thirty (30) day period after the date of this letter.

The payment must be mailed within thirty (30) days of the date of this letter to:

**Robertson, Anschutz, Schneid, Crane & Partners, PLLC**
**130 Clinton Road, Suite 202**
**Fairfield, NJ 07004**
**Attn: Laura Delavera**
**973-575-0707**

The funds submitted for reinstatement must be in the form of <u>cash</u>, <u>certified check</u> or <u>money order</u> only, and must be made payable to:
**Dyck-O'Neal, Inc.**

5.  If you do not cure the default within thirty (30) days of the date of this letter, Dyck-O'Neal, Inc. intends to exercise its right to accelerate the mortgage payments, and initiate foreclosure proceedings on your property.

THIS IS AN ATTEMPT TO COLLECT A DEBT.
ANY INFORMATION OBTAINED **WILL BE USED FOR THAT PURPOSE.**

23-093048 - NaS

6. You have the right to cure your default, and bring your mortgage payments current after the date of expiration of this letter, until the entry of the foreclosure judgment; however, you will be responsible for the court costs and attorney's fees calculated consistent with the rules governing the courts of the State of New Jersey, incurred in the foreclosure proceeding.

7. Under the terms of Mortgage you do not have the right to transfer the property subject to the mortgage without payment of the mortgage in full at the time of the transfer.

8. You have the right to an attorney. If you are unable to obtain an attorney or otherwise afford an attorney, you may contact the New Jersey Bar Association for Lawyer Referral Service in the county in which the property is located. Attached to this correspondence is a list of the Legal Services and Legal Aid Offices by county in the State of New Jersey, and a list of the Lawyer Referral Services available in New Jersey.

9. There may also be financial assistance for curing your default available from organizations operated by the state or federal government, or non-profit organizations. The New Jersey State Commissioner of Banking Promulgates a list of such organizations and a copy of that list is attached hereto. You may contact the Commissioner of Banking at 20 W. State Street, CN-040, and Trenton, New Jersey 08625 or by calling (609) 292-7272. A list of possible sources for assistance is enclosed herewith.

10. You may be entitled to housing counseling, at no cost through the Foreclosure Mediation Program established by the New Jersey Judiciary. You can call 609-278-7508 and ask for the number of a housing counselor in your area certified by the Department of Housing & Urban Development (HUD) or visit the New Jersey Housing and Mortgage Finance Agency (NJHMFA) website at http://www.njhousing.gov. At that time, you may make an appointment to meet with the HUD certified housing counselor who will discuss your financial situation and offer potential options to help you retain your home. The Court's mediation program can be contacted at 609-421-6100 or you can go to the Court's website at htttp://www.njcourts.gov Office of Foreclosure for more information.

11. If you have received a discharge of debt as part of a bankruptcy court proceeding, then the within notice does not constitute, nor is it intended to be, a demand letter for payment, but rather, is offered for informational purposes only.

12. If the property which is the subject of the mortgage has more than one dwelling unit but less than five, one of which is occupied by the debtor or a member of the debtor's immediate family as the debtor's or member's residence at the time the loan is originated, and is not properly maintained and meets the necessary conditions for receivership

THIS IS AN ATTEMPT TO COLLECT A DEBT.
ANY INFORMATION OBTAINED **WILL BE USED FOR THAT PURPOSE.**

eligibility, established pursuant to section 4 of the "Multifamily Housing Preservation and Receivership Act," P.L.2003, c.295 (C.2A:42-117), the residential mortgage lender shall file an order to show cause to appoint a receiver."

13. The lender DYCK-O'NEAL, INC is licensed in accordance with the New Jersey Residential Mortgage Lending Act

14. If the Lender takes the steps indicated in paragraph 5, you have the option to participate in the Foreclosure Mediation Program following the filing of a mortgage foreclosure complaint by initiating mediation pursuant to N.J.S.A. 2A:50-77 as set forth in the attached Notice of Mediation Program. Obtaining the assistance of a trained foreclosure prevention and default mitigation counselor is a prerequisite to participation in mediation. You are not required to pay any fees in order to participate in mediation. (De acuerdo con N.J.S.A., si el Prestamista toma los pasos indicados en el párrafo 5, usted tiene la opción de participar en el Programa de mediación para juicios hipotecarios una vez que se haya presentado una queja por una ejecución hipotecaria al iniciar mediación tal como lo establece 2A:50-77 en el aviso del Programa de mediación. Obtener asistencia de un consejero especializado en prevención de ejecuciones hipotecarias y mitigación por falta de pagos es un requisito previo para participar en la mediación. Usted no está obligado a pagar honorarios para participar en la mediación.)

15. If you do not agree that a default of your mortgage has occurred or you dispute the amount provided for in curing that default, please contact:

**Dyck-O'Neal, Inc.**
**3100 Monticello Avenue, Suite 650, Dallas, TX 75205**
**ATTN: Loss Mitigation Department**

Sincerely,
**Robertson, Anschutz, Schneid, Crane & Partners, PLLC**
*A Florida professional limited liability company*
130 Clinton Road, Suite 202
Fairfield, NJ 07004
973-575-0707

THIS IS AN ATTEMPT TO COLLECT A DEBT.
ANY INFORMATION OBTAINED **WILL BE USED FOR THAT PURPOSE.**

23-093048 - NaS